LOVELAND, PLAINTIFF IN ERROR, v. FISK ET AL., DEFENDANTS IN ERROR.

1. TIME, WHEN ESSENCE OF CONTRACT.

Time is of the essence of the contract in an option to purchase conditioned upon a payment of purchase money within a time specified. Payment within the life and limit of the option is a condition precedent to the vesting of any right in the vendee.

2. VENDOR AND PURCHASER—RESCISSION.

When time of payment is essential in an option to purchase and payment is not made within the limit, the vendor is under no obligation to demand performance in order to avail himself of the right to revoke his offer.

3. TRUSTS AND TRUSTEES.

A trustee cannot during the continuance of his trust deal with the trust property for his own benefit, but after the trust ceases he may acquire an interest in the property, in good faith, by purchase or otherwise.

*Error to the District Court of Arapahoe County.*

ON the 15th day of March, 1887, the defendant Fisk, in consummation of an arrangement between himself and four associates, entered into a written agreement with the defendant Clark, wherein Clark, in consideration of the sum of $5,000

(in hand paid), contracted and agreed to sell to Fisk certain real estate near Denver, and execute and deliver good and sufficient deeds therefor upon the payment of $175,000 as follows:

Five thousand dollars to be paid on or before the 15th day of June, 1887, and a further sum of $35,000, together with interest on $170,000 from the 15th day of June, 1887, at the rate of 7 per cent per annum, on or before the 15th day of September, 1887; the balance of the purchase price to be paid by six promissory notes of equal amounts in one, two and three years from date, secured by a trust deed on the land.

It was further provided that Fisk should plant not less than one thousand shade trees upon said premises during the spring of the year 1887, and also cause the extension of the railway known as the circle railway, so as to run through said premises, and cause to be established upon the premises during the year 1886 a depot building. Also that Fisk might plat the premises in lots and blocks, streets and alleys, (at his own expense,) but if he required such plat to be filed before the first $40,000 was paid, then he should pay Clark $2,500, which should apply on the purchase price. This agreement contains the following:

"It being the intention hereof on the part of said first party, in consideration of the $5,000, receipt whereof is hereinabove acknowledged, to convey, grant and confirm unto the second party, his legal representatives or assigns, the option of purchasing the above described premises under the terms and considerations before particularly specified; and it is especially agreed and understood that nothing herein contained shall be deemed or taken to require the second party to make the payments or purchase the property under the terms of this agreement. And if the second party shall elect to abandon the purchase of the property, or not make the payments under the terms of this agreement, and shall notify the first party in writing of such election, then this agreement shall be canceled and held for naught and the second party discharged from all liabilities hereunder. But if the second

party shall have made any payments herein provided for he shall not recover the same from the first party; but the same, together with the $5,000 in cash this day paid, shall be held and deemed as the full consideration of this option."

On the 29th day of March, 1887, J. Elliott Condict, one of the associates and an owner of one fifth interest in the contract so entered into by Fisk, assigned and transferred, for a valuable consideration, an undivided one half of his interest in said contract to the plaintiff, Frank W. Loveland. In this assignment it was provided that Condict was to pay all the consideration for the interest so assigned. And upon the failure of said Condict to pay in full the consideration for said $\frac{1}{5}$ interest, then Frank W. Loveland, his heirs or assigns, were to have reasonable notice of such failure, and should have the right and privilege to finish said payments and to have and take all the profits and benefits arising out of or in any wise accruing from the same. That Loveland was to be free from all assessments, charges or levies of any kind or nature whatsoever on account of the payments for said $\frac{1}{10}$ interest, or the preservation or improvement of same.

This assignment was assented to by defendant Fisk in writing as follows: " This is to certify that J. Elliott Condict is the owner of a $\frac{1}{5}$ interest in and to the contract between Rufus Clark and Archie C. Fisk, dated March 15, 1887, referred to in the above contract; and at present I am trustee to the extent of said interest for said Condict; and he has the right to transfer $\frac{1}{5}$ interest, or any part thereof, and as trustee I will recognize any such transfer or assignment." This instrument was filed for record April 26, 1887, and duly recorded.

The $5,000 due. June 15, 1887, was not paid, and on the 23d day of June, 1887, Fisk, acting for himself and associates, entered into a supplemental written agreement with Clark, wherein the payment of the $5,000 to be made on or before the 15th day of June, 1887, was extended until the 15th day of September, 1887, and the payment of $32,500 was extended until the 15th day of October, 1887. As consideration

for such extension Fisk was to build and put down an artesian well upon the premises. It was further agreed therein that upon the payment of the $2,500, which Fisk agreed to pay before the filing of a plat and by 11 o'clock on Saturday, July 2, 1887, a plat or map of the lands should be filed in the recorder's office. The $2,500 was paid and plat filed. This supplemental agreement plaintiff alleges contained other material modifications of the original that were prejudicial to his interest, and that it was made without his knowledge or consent. It appears from the evidence that neither Fisk nor his associates paid the $5,000 on September 15, 1887, or any part thereof, and that Clark, on the 16th of September, 1887, demanded payment from all the parties originally interested, except Condict, who was then absent; and they declining to pay said sum or anything further under the agreement, he declared the same forfeited, and thereupon placed the property in the hands of real estate agents for sale. About the 1st of October, upon the request of Clark, Fisk promised to execute a quitclaim deed, but did not do so until November 26, 1887; and in April, 1890, Condict also executed a quitclaim deed for the purpose of clearing the record.

On November 28, 1887, the defendant company was organized with Clark as president, Enos Miles vice president, and Fisk secretary. On that date a contract was entered into between Clark and the company for the sale of the property specified in the original agreement for the sum of $180,000 in deferred payments, running six years at 7 per cent per annum, secured by a trust deed. Fisk was given an option for five years to purchase one third of the capital stock of the company at its par value, upon the payment of that proportion of the monthly interest on the notes given for the purchase money. For about two years he paid this interest, amounting to about $350 per month. That the company has received in money and securities $122,000 for lots sold up to the time of the trial below, and over one half of the land was still held by the company. The value of the land has risen

from the fall of 1887 to the time this suit was commenced from $300 to $400 an acre to from $1,200 to $2,000 an acre.

The plaintiff below, plaintiff in error here, commenced this suit February 14, 1891; prays for an accounting and that the deed to the company be declared in trust for him to the extent of his interest, and that it execute a deed to him for one tenth of the land remaining unsold. Judgment dismissing complaint.

Mr. J. P. BROCKWAY and Mr. H. E. LUTHE, for plaintiff in error.

Messrs. ROGERS, SHAFROTH & WALLING and Mr. ENOS MILES, for defendants in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The gravamen of the action is that the defendant Fisk violated his trust, and, with the intent to defraud the plaintiff in error out of his interest in the trust estate, conspired with Clark and Condict to cancel and forfeit the original agreement; that the supplemental agreement and the subsequent transfer to the defendant company were made in consummation of such fraudulent purpose; that by virtue of the assignment and transfer by Condict the plaintiff in error became vested with an undivided one-tenth interest in the original contract that was non-forfeitable, and that the company took title to the real estate with notice, and subject to his equity. That Fisk's dealings with the company in relation to the property being in violation of his trust, the benefits thereby acquired inured to the plaintiff in error in proportion to his interest.

There is no evidence of any conspiracy between Clark, Condict and Fisk, or either of them; or of bad faith on the part of Fisk in procuring the supplemental agreement. On the other hand, it clearly appears from uncontradicted testimony that he, Fisk, acted in good faith, and, as he believed,

for the best interests of himself and associates,. in procuring the extension. By this agreement the option to purchase was extended to three months after they were in default in making the first payment. This being the only office it performed, by reason of the failure to make the payments as extended, whether its terms in other respects were more or less favorable to the beneficiaries is immaterial to this controversy.

It appears from the evidence that Fisk, McIntosh, Condict, H. R. and E. O. Wolcott agreed among themselves to obtain an option to purchase the real estate in question from defendant Clark; that Fisk, in his and their behalf, made the agreement dated March 15, 1887, in his own name, and thereby became a trustee of their respective interests in that agreement. He assumed no active fiduciary duties, but simply became the repository of those interests and represented them only in so far as the improvement and management of the property was under his supervision and control. He was under no obligation contractual or arising from the nature of his trust to pay any portion of the purchase price other than his own.

His declaration indorsed on the assignment by Condict to the plaintiff in error was an acknowledgment only that he held in his name a ⅕ interest in the agreement for Condict, and a recognition of Condict's right to assign the same, and did not affect or change the nature or extent of the trust. Plaintiff in error, by the transfer of one half of Condict's interest, acquired no other or greater rights than Condict himself was entitled to under the original agreement. What those rights were is not difficult of ascertainment. The agreement, by its terms, and the testimony of witnesses who were interested in the transaction, show beyond question that the money paid and the improvements made were the consideration for an option to purchase only, and were not a part of the purchase price, and that the parties purchased that option and its extension with a full understanding that time was of the essence of the contract to purchase, and that the payment of the first installment of the purchase price, if

they elected to purchase, must be made within the life and
and limit of the option. Moreover, by the form of the con-
tract itself, time of payment was made essential.

" Where the contract is really an offer on one side, with a
provision that this offer must be assented to and accepted,
when a mere acceptance is contemplated, or payment must
be made, when payment was the act of acceptance contem-
plated, at or before a specified date, then, of course, the act
of assent or of payment must be done within the prescribed
time, and time is from the very form of the contract essential.
If, therefore, a vendor agrees to convey, if payment be made
at or before a given date, or if an option is given which is to
be accepted by payment within a given time, then the time of
the payment is certainly essential; in fact, payment is a con-
dition precedent to the vesting of any right in the vendee."
Pomeroy on Contracts, sec. 387. It is unnecessary to notice
other conditions that concur in making time the essence of
this contract.

After the expiration of the time fixed for the payment of
the first installment, the option, theretofore irrevocable by
reason of the consideration paid therefor, ended by express
limitation, and the offer to sell upon the terms specified
thenceforth was unilateral, without consideration, and revoc-
able by Clark at any time before payment, which was the
act of acceptance contemplated. No payment of any part
of the purchase price having been made, Fisk and his asso-
ciates acquired no equity in the land. Clark was under no
obligation, legal or equitable, to demand performance in order
to avail himself of the right to revoke the offer; nor did
Condict's personal agreement that plaintiff in error should
have notice if he, Condict, failed to make any of the specified
payments, impose the duty of giving such notice upon Clark
or Fisk. Their duties and obligations were fixed by the
original agreement and could not be changed by any private
arrangement between Condict and plaintiff in error to which
they were not parties, and in no way interested in the con-
sideration paid therefor. Clark's right to revoke the offer,

as against Fisk and associates under the facts shown, is clear, and the plaintiff in error, by virtue of his right derived through Condict, held no other or greater right than they.

While it is true that a trustee cannot, during the continuance of his trust, deal with the trust property for his own benefit, it is equally true that when the trust ceases he occupies the same relation to the trust property as a stranger, and may in good faith acquire an interest therein by purchase or otherwise. As we have seen, the trust held by Fisk was limited to the time of the option, and when the option ended his trust ceased. It ended September 16, 1887. For sixty days thereafter the property was in the hands of agents for sale, and not until some time in the latter part of November did he acquire any interest in the same; at which time he was as free to deal with Clark in relation to the land as any stranger. The interest by him then acquired was in no way in consideration of past investments, but upon a new and valuable consideration to be by him thereafter paid. The assumption that the quitclaim deed given by him at that time was a part of the consideration for such interest is not sustained by the evidence. He had no interest to convey thereby, and the deed, as its terms express, was for the purpose solely of clearing from the title to the land the cloud cast thereon by the record of the assignment by Condict to plaintiff in error, and for no other purpose.

On a careful review of the record, we are convinced that the contention of plaintiff in error is without merit. The judgment of the district court is accordingly affirmed.

*Affirmed.*