No. 14,435.

DAVIS ET AL. *v*. MILLER ET AL.
(87 P. [2d] 492)

Decided February 14, 1939.

Mr. J. F. MEADOR, for plaintiffs in error.

Mr. SID PLEASANT, Mr. FRED A. VIDEON, for defendant in error Miller.

Mr. GEORGE A. PUGHE, Mr. W. E. PEPPERELL, Mr. CONRAD L. BALL, Mr. J. P. FLINN, Mr. DONALD I. MITCHELL, for defendant in error Federal Land Bank, on rehearing.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ACTION by Chas. O. Miller, one of the defendants in error, plaintiff below, against Ralph K. Davis and Belle C. Davis, husband and wife, for the possession and damages for unlawful detention, of 480 acres of land in Moffat county. Miller was successful in the trial court. On application for supersedeas, we affirmed the judgment, en banc, without a written opinion, November 7, 1938. A rehearing was granted, and we now deem it desirable to indicate our views on the questions presented.

Prior to January 14, 1937, the Davises were the owners of a contract of purchase from the Federal Land Bank of Wichita, referred to hereinafter as the bank, the fee owner of the property by virtue of a tax certificate of purchase. On January 14, 1937, in the late afternoon, the Davises assigned the contract of purchase to Miller for $1,340, Mr. Davis contemporaneously therewith executing another agreement with Miller and one Osborne, presumably an agent of the Federal Land Bank, to the effect that "In the event the Federal Land Bank of Wichita, Wichita, Kansas, disapproves said assignment, said sum of $1,340 shall be returned" to Miller. The bank appeared in court and signified its willingness to carry out the contract with either party, as the court might decide. Shortly after the assignment the Davises obtained certain information which led them to believe that they had been imposed upon, and asked to have the assignment voided. They offered to return the $1,340, and refused to surrender possession, hence, this suit. Damages were sought in the sum of $4,200, but awarded only in the amount of $291.

A general demurrer was interposed to the complaint, one of the grounds being that no cause of action was stated for ejectment because Miller had not sufficient title to maintain the suit. The demurrer was overruled and this ruling is assigned as error. On this proposition we need only to say that if the assignment is good, it is sufficient evidence of title as against the Davises. 9 R. C. L. 847. An equitable title, coupled with a legal right to possession is sufficient to sustain an ejectment, as between the parties. *Lewis v. Hamilton,* 26 Colo. 263, 58 Pac. 196; *Whitehead v. Callahan,* 44 Colo. 396, 99 Pac. 57.

The Davises also contend that sanction by the bank to the assignment was a condition precedent. The very language of the assignment negatives this contention. It says, "in the event The Federal Land Bank * * * disapproves said assignment," and the bank is here

disclaiming any interest as affecting the parties. The condition was subsequent and has been waived by the bank. The same language, ''disapproves said assignment,'' was used by Davis in his contemporaneous agreement with Osborne.

The third defense, and the only one of any moment, is the allegation of fraud in the procurement of the assignment, predicated on certain statements alleged to have been made by Miller. Prior to the acquisition of any title by the bank, the land had been owned by one McPherson, who had given a note secured by deed of trust on the property to one Gideon, which presumably was an outstanding lien on the property at the time the negotiations between Miller and the Davises were pending. The deed of trust was duly recorded. In addition there were two outstanding judgments, which apparently Miller could have acquired on which to base a redemption; but, in any event, defendants alleged that Miller forced them to make the assignment to him by his assertion that unless it was made he, as the owner and holder of a deed of trust on the property, would redeem it from the sheriff's certificate of purchase; that said assertion was untrue. It was known several weeks before January 14th that Miller wished to obtain the property and that he had made inquiry concerning it at the office of an attorney. Davis heard about this and asked the attorney to write Miller regarding it. The attorney complied with the request and as a result thereof the parties met in the attorney's office January 13th. Davis apparently was somewhat suspicious and asked Miller if he had the Gideon deed of trust. Davis says Miller told him that he, Miller, had it. Miller says he merely told Davis that Gideon had told him that it was available for his use any time he, Miller, wanted it. Gideon admitted on the witness stand that Miller could have had it.

Meanwhile, Davis also had made inquiry of Miller's financial ability to redeem, and on the morning of Janu-

ary 14th, the Davises called Gideon on the telephone to learn whether he still held the deed of trust that Miller was to use, and Gideon told them that he did. There was evidence of further conversation about the matter just before the papers were signed late in the afternoon of January 14th. An escrow agreement was drawn up at the same time, but Davis refused to sign that because he wanted the money promptly.

It developed after the assignment that this particular land could not have been redeemed under the Gideon deed of trust, but there is no contention that Miller knew this before he received the assignment, so there was no fraud in his representation that he was going to redeem. In addition, since the Gideon papers were on record, the Davises could have ascertained their legal effect, and it appearing that on the morning of January 14th, before they signed away their equity, they made an independent investigation of the facts, inquiring from Gideon himself, they cannot be heard to say that they were relying on Miller's alleged misrepresentations.

There is no proof in the record that Miller himself actually told the Davises he was going to redeem. Mrs. Davis's testimony concerning the conversation was, "Well, Mr. Osborne said that Mr. Pughe told him that Miller was going to start redeeming that afternoon if we didn't assign that contract to him." This is not a very convincing statement, in light of the fact that the letter which brought about the deal was written by the attorney at Davis's request.

■ "Where the parties know that the legal effect of known facts is uncertain and base their agreement on that assumption, it is clear that a mistake of law does not affect the validity of their agreement." 12 Am. Jur. 635, §140.

The trial court was clearly right in finding that the Davises had not established proof of fraud, and in a full and comprehensive decree it correctly disposed of the vital questions in this case. Its conclusions are amply

supported by the record, which discloses no prejudicial error.

The judgment is affirmed.