No. 15,728.

Dunton, doing business as Jack Dunton Realty Company *v.* Stemme.

(187 P. [2d] 593)

Decided November 24, 1947.

Messrs. ENOS & MORRATO, BERNICE M. BUCHLER, for plaintiff in error.

Mr. CLARENCE L. BARTHOLIC, for defendant in error.

MR. JUSTICE ALTER delivered the opinion of the court.

V. J. DUNTON, doing business as Jack Dunton Realty Company, brought an action in the district court wherein he sought to recover judgment against Fred E. Stemme for $325 allegedly due him as commission in a real-estate transaction. The cause was tried to the court without the intervention of a jury and judgment entered in favor of defendant, to review which a writ of error was duly issued.

Herein V. J. Dunton will be referred to as plaintiff; Fred E. Stemme as defendant; and Mrs. Millie L. King, the prospective purchaser, as purchaser.

In the complaint it is alleged, and in the answer admitted, that plaintiff is a licensed real-estate broker doing business in Denver, Colorado, and defendant is the owner of certain real estate located in that city. During the month of May, 1945, defendant orally listed his real estate with plaintiff for sale for $6,500 and agreed to pay the latter a five per cent commission in the event he succeeded in securing a buyer who was ready, willing and able to purchase the property on terms stipulated and provided by defendant. It is further alleged in the complaint, and denied in the answer, that plaintiff secured such a purchaser and that defendant thereby became indebted to plaintiff in the sum of $325.

The record discloses that on May 2, 1945, plaintiff secured a purchaser for defendant's property; and that evidencing the same a written contract was executed, which was approved by defendant. This contract contained the following provisions:

"The entire purchase price which I agree to pay for said property is Sixty-five Hundred and no/100 Dollars ($6500.00) of which amount Three Hundred Seventy-five and no/100 Dollars ($375.00) is paid to you herewith, and the balance to be paid as follows: $1125.00 additional cash from private funds on or before May 28, 1945, and the buyer to secure a first mortgage loan in the sum of $4500.00 from T. W. Midkiff, executing a promissory note therefor, secured by a first deed of trust on said property, bearing interest at 4½% per annum, and payable in monthly payments of $46.64 or more, (by special arrangement with lender) paying the gross proceeds thereof to the seller at the time of closing; and the buyer to execute her promissory note for the balance of the purchase price, payable to the seller or order, bearing interest at 5% per annum, secured by a second deed of trust covering the above property, and payable in monthly payments of $10.00 or more plus interest.

\* \* \*

"This sale *shall be closed at the office of the agent*

*during regular office hours on the day last hereinabove mentioned* [May 28, 1945].

*"Time is of the essence of this contract and of all the conditions thereof,* and if the payments above provided to be made by me are not so made or tendered, unconditionally, or, if I fail to fulfill any other conditions or agreements herein required of me, then the owner of said property, with the written consent of the agent, or said agent, at his option, may at his election declare this contract terminated in which event the sum paid herewith is to be and become the absolute property of the agent, as liquidated damages, and this contract and receipt shall thereupon be of no force and effect, and all parties shall be released from all obligations hereunder, and, unless the payments are so made, the owner shall not be required to make tender of deeds; * * *" (Italics ours)

■ The record discloses that the purchaser of the property resided in Texas and departed therefor immediately after signing the contract on May 2, 1945. With a promptitude that characterized her acknowledgment of the deeds of trust hereinafter mentioned, she mailed a bank draft for $1,125 immediately upon her return to Texas. Midkiff's attorney assumed to prepare the note and deed of trust evidencing his loan. These bearing date of May 26, 1945, were sent to the purchaser in Texas, who acknowledged the deed of trust there on May 29, 1945. Plaintiff assumed to prepare the note and deed of trust for $500 which were to be executed by the purchaser and delivered to defendant in Denver. These last mentioned instruments bear date of May 31, 1945, and were acknowledged by the purchaser in Texas on June 2, 1945. Defendant's deed to the property in question was duly executed and in his attorney's hands on May 28, 1945, for delivery to the purchaser when the terms and conditions of the contract were fully met by the latter. Defendant was absent from the city on May 28, 1945, and returned on June 1, 1945, whereupon he in-

quired as to the completion of the contract of purchase and was informed by plaintiff that the cash required had been paid by the purchaser and that the note for $4,500 and deed of trust securing the same were ready for delivery, but that the $500 note secured by deed of trust had not yet been returned from Texas. Whereupon defendant expressed his displeasure, and on June 1, 1945, wrote plaintiff, definitely stating that because the payments provided in the contract had not been made in compliance with its terms, the contract of sale was terminated. Subsequently, the cash payments, made in accordance with the terms of the contract and then in possession of plaintiff, were returned by plaintiff to the purchaser. It is asserted by plaintiff, and denied by defendant, that the latter, on June 1, 1945, upon being advised that the contract had not been completed, consented to an extension thereof. Whether or not defendant consented to an extension of the contract, the general findings of the trial court can be supported only upon the theory that it found he did not so consent, and there being competent evidence in the record to support it, the finding will not be disturbed on this review.

The sole and only question necessary for our determination is whether, under the circumstances here, defendant became indebted to plaintiff in the sum of $325 for services rendered in connection with the sale of his property, and this can be answered only by a consideration of the terms of the contract in conjunction with the statute relating to real-estate brokers.

The provision of the contract relevant to the question here involved is the last quoted paragraph thereof. It provides that, "Time is of the essence of this contract and of all the conditions thereof." As we understand and construe that clause it means that the performance by one party at the time specified in the contract is prerequisite and essential in order to enable him to require performance of its terms by the other party thereto. It means that time is such a material matter

as to require exact compliance with the terms of the contract in this respect before there is any right to require a counter-performance. Ordinarily a breach of the terms of the contract may result in its termination at the election of the party who is not in default. If this provision of the contract is to be given its usual and customary interpretation and construction, under the evidence presented there can be no question that the contract was terminated when the purchaser failed to to comply with its terms. It is plaintiff's contention, however, that the "Time is of the essence" clause in the sentence is qualified by the following: "and if the payments above provided to be made by me are not so made or tendered, unconditionally, or, if I fail to fulfill any other conditions or agreements herein required of me, then the owner of said property, with the written consent of the agent, or said agent, at his option, may at his election declare this contract terminated in which event the sum paid herewith is to be and become the absolute property of the agent, as liquidated damages, * * * " Plaintiff further contends that notwithstanding the definite and unequivocal provision of the contract making time the essence thereof, nevertheless the last provision noted vests in him the power to terminate the contract with or without the written consent of the owner. If this last quoted portion of the contract should be construed as plaintiff contends it should be, it would entirely negative and nullify the provision that, "Time is of the essence" of the contract and vest in the agent the power to extend the time of the purchaser's performance indefinitely or at least for a reasonable time. We cannot adopt this contention. As we construe it, this last quoted clause in the contract is for the agent's protection in event the purchaser fails to comply with the terms and conditions to be by her performed in the completion of the contract. Under that clause, if the contract had been terminated because of the purchaser's failure or refusal to comply with its terms, plaintiff might have

been entitled to withhold his commission from the purchaser's funds in his possession, and this, as we have shown, he did not see fit to do. According to the record, plaintiff claimed no rights as against the purchaser, notwithstanding the fact that she had not, as the record here shows, because of the apparent neglect of plaintiff in the timely preparation of the note and deed of trust for her signature and acknowledgment, complied with the terms and provisions of the contract.

■ Plaintiff asserts that he was entitled to judgment in the amount of his commission because he had procured a purchaser ready, willing and able to enter into a valid contract of sale upon the terms fixed by the owner. The applicable statute reads: "No real estate agent or broker shall be entitled to a commission for finding a purchaser who is ready, willing and able to complete the purchase of real estate as proposed by the owner until the same is consummated or is defeated by the refusal or neglect of the owner to consummate the same as agreed upon." '35 C.S.A., c. 15, §25.

The listing here was oral; the contractural rights and corresponding duties and obligations are fixed by the statute under which a real-estate broker does not earn his commission when he finds a purchaser ready, willing and able to buy on terms and conditions specified by the owner, but in addition to finding such a purchaser the sale must either be consummated or the lack of consummation must be the result of the owner's failure or refusal. There is no contention here—as a matter of fact it is admitted—that defendant was prepared to deliver his deed to the purchaser on May 28, 1945, during plaintiff's regular office hours; consequently, there is no failure or refusal on defendant's part which will entitle plaintiff to a commission from him. The failure here, to whatever source attributable, was on the part of the purchaser.

■ It is our duty, if we can, to so construe the contract and the last quoted portion thereof as to give it

force and effect and harmonize it with other provisions contained therein. The "time" clause and the "termination" clause are coordinate. To construe these as plaintiff would have us do, we must substitute "provided" for the conjunction "and." The two clauses deal with different subject matters, and the last clause here in question confers definite rights on plaintiff in providing liquidated damages; the "time" clause is wholly apart and independent thereof. Accordingly, plaintiff is effectively protected for if he produces a purchaser ready, willing and able to purchase upon the terms and conditions set forth in the contract and the owner fails or refuses to consummate the sale, he is entitled to his commission from the owner by virtue of the statute, while if the failure or refusal to consummate the contract of sale is upon the part of the purchaser, the contract provides a method by which the purchaser who, by his actions in breaching the contract, becomes indebted to plaintiff for his commission.

Plaintiff relies on our decision in *Wallick v. Eaton*, 110 Colo. 358, 134 P. (2d) 727, wherein we said: "The rule is that the services of a real estate broker are fully performed and his commission fully earned, when he has procured a purchaser ready, willing and able to enter into a valid contract of sale upon the terms fixed by the owner." The question of the failure or refusal of the owner was not therein involved, and, consequently, was not considered. In connection with this quoted part of the decision, it may be said that it is an almost universal rule of construction that any general statements in an opinion should be interpreted in the light of the particular facts in the case in which such statements are made.

From the record it would appear that the failure to consummate the contract in accordance with the terms and provisions thereof was due to plaintiff's, as well as Midkiff's attorney's, delay in preparing the notes and deeds of trust for the purchaser's signature and acknowl-

edgment and not attributable to any failure or refusal on defendant's part. Plaintiff did not attempt to avail himself of the liquidated damage provision contained in the contract. If applicable under the facts and circumstances here, the purchaser would be liable to plaintiff for a commission. It is clear to us that under the facts disclosed by the record and our interpretation and construction of the contract, plaintiff is not entitled to recover from defendant.

Other specifications have been carefully examined and found to be without merit.

The judgment, accordingly, is affirmed.

Mr. JUSTICE HAYS dissents.

Mr. JUSTICE HILLIARD does not participate.