No. 18,071.

DUNTON MORTGAGE COMPANY, INC., ASSIGNEE *v.*
HENRY A. BREYMAIER, ET AL.

(316 P. [2d] 1048)

Decided October 28, 1957.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, for plaintiff in error.

Mr. EMORY L. O'CONNELL, Mr. SAMUEL S. GINSBERG, for defendants in error.

*In Department.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

DUNTON MORTGAGE COMPANY is the assignee of Real Estate Realization Company. The latter company entered into a contract with Henry and Esther Breymaier and the present action stems from this agreement. One V. J. Dunton was the president of each of the above named companies and negotiated the contract with the Breymaiers.

The mortgage company brought action and prayed that the Breymaiers be required "specifically to perform" the contract, and to convey to them 12.5 acres of land or, in the alternative, for judgment in the sum of $7,500.00 plus interest; the said sum being the amount paid by the Realization Company on the written contract. Trial was to the court and judgment entered in favor of the Breymaiers. The mortgage company, seeking reversal, brings the cause to this court by writ of error.

Counsel for the Breymaiers contend that the agreement in question amounted to an option to purchase real estate, and automatically terminated upon the failure of optionee to exercise the same. The mortgage company contends that the contract was not a mere option, that it was a divisible contract to sell, and to the extent that land was paid for at the rate of $600.00 per acre, the Breymaiers are obligated to deliver deeds thereto upon demand. Having paid $7,500.00, the mortgage company demands deeds to 12.5 acres.

With the foregoing contention of the parties in mind, we direct attention to the pertinent provisions of the contract, which we summarize as follows: The Breymaiers as owners of a tract of land containing eighty acres agreed to permit the Real Estate Realization to subdivide seventy-five acres thereof into lots, to lay out streets and alleys, and to do all things necessary to create a residential area. The contract contained the statements that:

"WHEREAS, the said parties hereto are both desirous of creating a subdivision of the above described prop-

erty, and selling and disposing of the same in tracts or plats as subdivided; * * *

"1. That the Owners agree, under the terms hereof, to permit the Corporation to subdivide the said above described Seventy-five (75) acre tract of land in such manner as the Corporation may see fit.

"2. That the Corporation agrees that it will employ within ninety (90) days from the date hereof, at its own expense, a qualified surveyor, to tentatively lay out a subdivision on said land, including the necessary streets and roadways in such a manner as the Corporation may see fit, and to stake the outside boundaries thereof, and prepare a tentative map or plat thereof, as a whole or in parts, and as sales warrant, to file the same or parts thereof from time to time, with the proper County authorities; and the Corporation agrees, at its own expense, to secure abstracts for said tracts or plats as needed, and to secure for the land such public utilities as the Corporation deems proper and necessary, including water and electricity, and to grade the streets and roadways as laid out, as may from time to time be reasonably needed in the opinion of the Corporation, as the sale of tracts or plats progresses."

Defendants were to receive $600.00 per acre net, and execute and deliver to assignor, or its assigns, warranty deeds covering portions of the land described in said agreements. These conveyances could be demanded within a period of five years from the date of the contract. In the event the Breymaiers had not received a total sum of $6,000.00 on or before October 1, 1948, the agreement was to terminate. The $6,000.00 was paid. Upon receiving this payment on or before October 1, 1948, and a like payment on or before October 1st of any subsequent year, the Breymaiers were obligated to execute and deliver to assignor, or its assignee, a deed or deeds for the land designated by assignor on the basis of one acre, including one-half of all abutting streets and

alleys, for each $600.00 theretofore received by them under the terms of the agreement.

The agreement further specified that during each twelve month period from October 1 to September 30 of each year, this agreement is in force and effect commencing October 1, 1948. In the event the defendants have not during such twelve month period received on or before the respective dates of each said year, from the sale of land or from assignor, a total sum equal to the amounts shown below, then the agreement shall terminate.

|  | Total payments to respectives dates during 12-month period. |
|---|---|
| January 1st | $ 500.00 |
| April 1st | 1,000.00 |
| July 1st | 1,500.00 |
| October 1st | 6,000.00 |

The contract further provided that "time is of the essence" thereof.

It is admitted by the pleadings, or uncontradicted evidence, that the Breymaiers performed all things required of them in connection with the creation of the contemplated subdivision. It also is undisputed that the contracting company did not prepare and file with the proper county officers a plat creating a subdivision of all or any part of the acreage covered in the contract; that it failed to make the payment of $4,500.00 required to be made on October 1, 1949, and all payments coming due thereafter.

It is undisputed that the company failed to grade streets and roadways, or to secure installation of any utilities. All that was done by the company in connection with the development was to secure a tentative blueprint of an addition to be known as Mission Hills. This tentative map included the Breymaier property and other land. Mr. Dunton testified that he endeavored to

secure sales in the area but was unable to do so, and eventually abandoned the proposed development. He stated, "It was found, however, during the period of time of development of the advertising and setting up of the field office and so on, that the matter of water was all-important and that the financing could not be secured, so we just had to discontinue." He further testified that he attempted to get an extension of time on the scheduled payments but that the Breymaiers refused that request.

On the day following the execution of the contract the company forwarded a quit claim deed to the Breymaiers with a significant letter which we think has probative value in determining the intent of the parties. The letter reads as follows:

"We hand you herewith quit claim deed from Real Estate Realization Company to Henry A. Breymaier and Esther D. Breymaier conveying the seventy-five (75) acres located at South University and Orchard, Arapahoe County, Colorado, which is the subject matter of the contract, dated June 12, 1947, between the undersigned and said Henry A. Breymaier and Esther D. Breymaier, and which quit claim deed covers all said land described in said contract, except such portions as may, prior to said quit claim deed being recorded, if the same is ever recorded, have been conveyed by said Henry A. Breymaier and Esther D. Breymaier to the undersigned or any other parties.

"This quit claim deed is to be held and delivered by you under the following terms and conditions:

"In the event the undersigned fails to make any payment that may be due said Henry A. Breymaier and Esther D. Breymaier, under the terms of said contract, on October 1, 1947, January 1, 1948, April 1, 1948, July 1, 1948, October 1, 1948 or on January 1, April 1, July 1, or October 1, of any subsequent year.

"Or in the event said Henry A. Breymaier and Esther

D. Breymaier are not paid in full for said entire tract of land in accordance with the terms of said contract, on or before five (5) years from the date of said contract, you shall deliver said quit claim deed to Henry A. Breymaier and Esther D. Breymaier for immediate recording by them.

"Provided, however, if the undersigned fully performs said contract, above referred to, and said Henry A. Breymaier and Esther D. Breymaier are paid in full for said entire tract of land, in accordance with the terms of said contract, on or before five (5) years from the date of said contract, you are to re-deliver said quit claim deed to the undersigned.

"Please acknowledge receipt of the enclosed deed on the enclosed carbon copy of this letter.

"Yours very truly,

"REAL ESTATE REALIZATION COMPANY

"By /s/ V. J. Dunton

"The undersigned acknowledges
receipt of the Quit Claim Deed
referred to in above letter.

"Cecil R. Ditsch

"by Marjorie Adams."

No demand for title to any acreage, or refund of payments, was made upon the Breymaiers until the commencement of the action March 3, 1954. The action was filed six years and nine months after the execution of the contract.

Questions to be Determined.

First: *Is the assignee of the contracting company legally justified in claiming a severable right to the claimed acreage, notwithstanding the admitted abandonment of the project and failure of the assignor to perform any of the acts contemplated as essential to the creation of the subdivision?*

This question is answered in the negative. Before the mortgage company or its assignor could demand

a deed to any portion of the acreage, it was necessary that a subdivision be created and a plat thereof filed with the proper county authorities. Only then, and after the required payments had been made, could there be any demand for deed of a portion of the total acreage covered by the contract. The agreement provides that in computing the acreage to be conveyed there should be included one-half of all abutting streets and roadways; however no streets or roadways were laid out. If there had been substantial performance by either the mortgage company or its assignee the contention that the contract is divisible might be entitled to greater weight. Moreover, paragraph 4 of the contract contains a specific provision relating to partial conveyances. It is there stated that, "upon the making of the total payments of $6,000.00 on or before October 1, 1948, *and on or before October 1st of any subsequent year,* the owner shall promptly execute and deliver to the Corporation or such person, or persons, as it may designate, a deed or deeds for the land designated * * *." (Emphasis supplied.) This language can mean but one thing. The company was to pay $6,000.00 on or before October 1, 1948, *and* a similar sum during a subsequent year (within the five year period) before any deed could be called for. It is not contended that any such payment was made.

It is disclosed by the record that a request for additional time was made, and that the Breymaiers refused the request and stated that they "must insist upon payment by return mail of the amounts due under the original agreement if you intend to keep the agreement in full force and effect."

Second: *Under the factual situation hereinabove set forth, does the transaction, in essence, amount to the granting of an option by the Breymaiers which terminated upon the failure of the company to exercise the same?*

This question is answered in the affirmative. We direct attention to the fact that the Real Estate Re-

alization Company did not agree to purchase any property, and did not bind itself to make any payments. In *Stelson v. Haigler,* 63 Colo. 200, 165 Pac. 265, the court said:

"It may be laid down as an established rule of law that unless the contract contains language which may reasonably be construed as an agreement on the part of the vendee to purchase the property, or to assume some obligations thereunder, it will be an option contract and not an agreement of sale and purchase. It is impossible to conceive of an agreement of sale and purchase without obligation on the part of the vendee to purchase. On the other hand, the absence of such obligation is the distinctive characteristic of an option contract. A contract of sale creates mutual obligations on the part of the seller to sell, and on the part of the purchaser to buy, while an option gives the right to purchase, within a limited time, without imposing any obligations to purchase."

The above language was quoted with approval in *Morath v. Perkins, et al.,* 86 Colo. 101, 278 Pac. 611.

The quit claim deed and the letter of transmittal evidence the fact that the company did not intend to bind itself to purchase the whole or any part of the land.

The judgment is affirmed.

MR. JUSTICE FRANTZ, MR. JUSTICE DAY and MR. JUSTICE HOLLAND concur.