306 F.2d 711
 62-2 USTC P 9692
 Paul GOLDSTEIN, Zelda Goldstein, Abe L. Hoffman, Florence
Hoffman, Gilbert Goldstein, Miriam Goldstein, David
Goldstein, Sylvia Goldstein, Abe H. Goldstein, Yetta
Goldstein, Wm. J. Goldstein, Ellizabeth Goldstein, Sam
Goldstein, Tillie Goldstein, J. Glenn Donaldson and Frances
E. Donaldson, Appellants,
v.
George H. ALLEN, individually and as Director of Internal
Revenue for the District of Colorado, Appellee.
 No. 6924.
 United States Court of Appeals Tenth Circuit.
 Aug. 2, 1962.
 
 Abe L. Hoffman, Denver, Colo. (Donaldson, Hoffman & Goldstein, Denver, Colo., on the brief), for appellants.
 Abbott M. Sellers, Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Charles B. E. Freeman, Attorneys, Department of Justice, Lawrence M. Henry, U.S. Atty., and Merle R. Knous, Asst. U.S. Atty., on the brief), for appellee.
 Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The question is whether a gain in the sale of a capital asset is a long-term or a short-term gain for federal income tax purposes. As there is no dispute on the pertinent dates, the critical issue is the identification of the asset sold. The appellee Director held that the gain was short-term. The taxpayers paid the tax and sued for a refund. After a trial without a jury the court below denied recovery and this appeal followed.
 
 
 2
 The federal income tax laws give preferential treatment to long-term gains on the sale of capital assets.[1] A short-term is one derived from the sale or exchange of a capital asset held for not more than six months and a long-term gain arises when the asset is held for more than six months.[2]
 
 
 3
 On July 14, 1954, appellants (taxpayers) acquired for $5,000 a 30-day option to purchase from one More (seller) 59 acres of land in Jefferson County, Colorado, at the price of $167,000. The option provided that, if the taxpayers could not obtain certain water, sewer, and zoning commitments within the 30-day period, the $5,000 paid for the option was to be repaid to them but if the transaction failed for any other reason, the $5,000 was to be retained by the seller as liquidated damages. On August 10, 1954, the option was extended 50 days in consideration of the right of the seller to retain $750 in the event that the agreement was terminated because of failure to obtain the commitments.
 
 
 4
 A development firm, B & B, Inc., was interested in the land for residential construction which had to begin before January 1, 1955, because of favorable financing commitments which would expire at that date if construction were not under way. As the seller was elderly and inform a ready means of closing the transaction was desirable.
 
 
 5
 On September 23, 1954, the option agreement was amended to create an escrow arrangement whereby the taxpayers were required to deposit the $162,000 balance of the purchase price with an escrow agent not later than October 20, 1954, and the seller was required to place with the escrow agent a deed conveying the East Half of the property to the taxpayers and an irrevocable power of attorney empowering the escrow agent to convey the West Half to the taxpayers or their assigns after January 16, 1955, but prior to February 1, 1955. The amendment further provided that if the taxpayers could not 'in the exercise of all good faith and due diligence' secure the water, sewer, and zoning commitments by October 22, 1954, they had the right to terminate and secure a refund of all payments and deposits except $750.
 
 
 6
 On September 24, 1954, the taxpayers and B & B made an agreement subject to various contingencies whereby taxpayers agreed to convey the East Half to B & B on October 20, 1954, for $83,500 and to assign their right to purchase the West Half to B & B on January 16, 1955, for $186,000.
 
 
 7
 The record shows no consideration supporting the September 23 amendment and shows no extension of the July 14 option beyond October 2, 1954, the date at which the original 30-day term plus the 50-day extension expired. The escrow deposits for which the September 23 amendment provided were not made on October 20 and the record shows no agreement for any extension. In November, 1954, the exact dates not appearing in the record, the water, sewer, and zoning commitments were either obtained or waived and the taxpayers deposited the balance of the purchase price, $162,000, with the escrow agent and accepted the delivery of a deed to the East Half. The seller received one-half of the purchase price and deposited an irrevocable power of attorney authorizing the conveyance of the West Half by the agent. Also in November the taxpayers conveyed the East Half to B & B for $83,500.
 
 
 8
 On January 16, 1955, the escrow agent conveyed the West Half to B & B; the seller received the balance of his sale price; and B & B paid taxpayers $186,000.
 
 
 9
 The taxpayers contend that on January 16, 1955, they sold to B & B the option agreement acquired by them on July 14, 1954, more than six months previously. The Director urges that the capital asset sold in January to B & B was the contractual right to receive a conveyance of the West Half and, as such right was acquired in November, 1954, the gain was short-term.
 
 
 10
 An option is a capital asset which may be sold.[3] This rule does not result in a conclusion favorable to the taxpayers. Under Colorado law an agreement giving a right to purchase but imposing no obligation to purchase is an option[4] and, when supported by consideration, gives rise to a unilateral obligation on the part of the seller.[5] An option expires unless it is exercised timely and in accordance with its provisions.[6] The July 14, 1954, option was not exercised within the time provided or within any extension of that time supported by consideration.
 
 
 11
 Even if it be said that the conduct of the parties was such that the option remained alive after its extended termination date, the option came to an end in November when the taxpayers paid the entire purchase price into escrow and accepted a deed to the East Half.[7] In connection with the November transaction the taxpayers reserved no right to refrain from purchasing the West Half and to obtain a repayment of all or any of the purchase price.[8] We agree with the trial court that there was no option or alternative left to the taxpayers, the seller, or the escrow agent. Thereafter the taxpayers could not refuse to purchase the West Half; the seller could not refuse to sell the West Half; and the escrow agent could refuse neither to execute the deed under the power of attorney nor to pay the balance of the purchase price to the seller. As a result of the November transaction, whatever rights the taxpayers may then have had under the July 14 agreement ended and in place thereof the taxpayers had a contractual right to a conveyance of the West Half. This contractual right was a valuable and assignable property right[9] and was sold to B & B in January. As the capital asset so sold had been held less than six months, the sale resulted in a short-term capital gain.
 
 
 12
 Affirmed.
 
 
 
 [1]
 26 U.S.C. 1201(b)
 
 
 [2]
 26 U.S.C. 1222(1) and (3)
 
 
 [3]
 Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 498, 56 S.Ct. 569, 80 L.Ed. 824
 
 
 [4]
 Stelson v. Haigler, 63 Colo. 200, 208, 165 P. 265, 268, 3 A.L.R. 550; Horton v. Hedberg, 143 Colo. 62, 64, 351 P.2d 843, 845
 
 
 [5]
 Gordon v. Darnell, 5 Colo. 302, 303, 304; Beulah Marble Co. v. Mattice, 22 Colo. 547, 556, 45 P. 432, 435. Cf. Ireland v. Jacobs, 114 Colo. 168, 174, 163 P.2d 203, 206, 161 A.L.R. 1413
 
 
 [6]
 Dunton Mortgage Company, Inc. v. Breymaier, 136 Colo. 343, 349-350, 316 P.2d 1048, 1051-1052; Johnson v. George, 119 Colo. 594, 597, 206 P.2d 345, 347; Rude v. Levy, 43 Colo. 482, 487-488, 96 P. 560, 561-562, 24 L.R.A.,N.S., 91
 
 
 [7]
 Cf. Commissioner of Internal Revenue v. Stuart, 3 Cir., 300 F.2d 872, 876
 
 
 [8]
 We note the taxpayers' reliance on Par. 15 of the July 14, 1954, agreement but that does not help them. If it be taken that the July 14 agreement was in effect in November, and we think it was not, the escape provision in Par. 15 does not cover a partial purchase
 
 
 [9]
 Matson v. White, 122 Colo. 79, 83-84, 220 P.2d 864, 866; Davis v. Miller, 103 Colo. 586, 588-589, 87 P.2d 492, 493