533 P.2d 523 (1975)
Leah ROSENTHAL, Plaintiff-Appellee,
v.
A. I. SANDUSKY et al., Defendants,
v.
Eugene A. BOND, Intervenor-Appellee,
v.
Dennis O'NEILL, Intervenor-Appellant.
No. 74-036.
Colorado Court of Appeals, Div. III.
January 7, 1975.
Rehearing Denied January 28, 1975.
Certiorari Denied April 14, 1975.
*524 Joseph P. Constantine, Denver, for plaintiff-appellee.
No appearance for defendants.
Dawson, Nagel, Sherman & Howard, Hugh A. Burns, Theodore E. Worcester, Denver, for intervenor-appellee Eugene A. Bond.
Sonheim & Helm, Phillip A. Less, Arvada, for intervenor-appellant Dennis O'Neill.
Selected for Official Publication.
VanCISE, Judge.
Intervenor Dennis O'Neill appeals from a judgment in a quiet title suit holding that he had no interest in the property and denying his counterclaims for specific performance and for damages for fraud, collusion, and breach of contract. We modify the judgment to eliminate one item of costs allowed, and, as modified, affirm.
Plaintiff, Leah Rosenthal, and O'Neill on or about December 29, 1971, signed a receipt and option (Option) prepared by O'Neill on a printed form furnished by him, whereby Rosenthal agreed to sell to O'Neill for $22,500 approximately 70 acres of land known as the Indus Placer located in Lake County, Colorado. The Option called for $1,500 earnest money, receipted for, with the remaining $21,000 to be "escrowed by February 15, 1972 in Buena Vista Bank and Trust Company," the same to be paid "on March 27, 1972 upon seller showing merchantable title, or as soon thereafter that seller can show evidence of merchantable title." It further provided that if merchantable title could not be shown within 85 days, the amount received was to be refunded and both parties were released from all further obligations.
*525 No escrow agreement was ever entered into by O'Neill and Rosenthal with the bank. Instead, O'Neill opened a checking account at the Buena Vista Bank on February 15, 1972, in the name of "Indus Investments Escrow Account" naming himself as the only authorized drawer. He deposited therein $7,600 on that date and $13,400 on March 10, 1972. On October 27, 1972, O'Neill closed this account and deposited the money in a three-month 5 percent certificate with the same bank in the name of "Indus Investments, Ltd.," a limited partnership formed by O'Neill and others in February 1972, to develop this Indus Placer property. On January 29, 1973, this certificate was retired, the proceeds were paid to O'Neill for Indus Investments, Ltd., and the partnership was liquidated.
On June 29, 1972, Rosenthal commenced this action as a quiet title suit under C.R. C.P. 105, joining as parties defendant her deceased father, A. I. Sandusky, her five deceased brothers and sisters, Florence King (widow of one of the deceased brothers), Jake Sandusky and John Welsh (grantees on the deed through which all title claims are derived), and "all unknown persons who claim any interest in the subject matter of this action." None of the name defendants participated in the action, and the unknown persons were represented only by the military attorney appointed by the court.
All claims to title were based on ownership in Rosenthal's father, A. I. Sandusky, who died a widower and intestate in 1944. He had six children, all of whom survived him. No estate or heirship proceedings were ever instituted for his estate. Thereafter, interests were transferred by deeds or as a result of deaths so that by the time she commenced this lawsuit, Rosenthal, in her own name, appeared to own outright some undivided interests in the property. She claimed ownership of the balance through 18 years adverse possession (C.R.S.1963, 118-7-1) and 7 years possession under color of title and payment of taxes (C.R.S.1963, 118-7-8).
The balance of the interests in the property appeared to have been owned by other descendants of Sandusky, all of whom, it was discovered, had conveyed their interests to Eugene A. Bond by deed dated January 25, 1971. That deed was not recorded and was unknown to Rosenthal or O'Neill until September 13, 1972. On that date, Bond filed his motion to intervene in the lawsuit as a defendant and counterclaimant, and order granting the same was entered September 21. He sought a decree quieting title in himself based on his deed.
Five days later, Rosenthal notified O'Neill about the Option conditions not having been fulfilled and the impossibility of her delivering clear title, and returned his $1,500 deposit. O'Neill refused the check and, on October 10, returned it to Rosenthal. Thereafter, the money was deposited with the court. O'Neill then moved, and was allowed, to intervene as a defendant and counter-claimant. He sought a determination that his interests in the land were superior to Bond's and a decree requiring Rosenthal to perform the Option. He later amended to add a claim against Rosenthal and Bond for damages for fraud, collusion, and breach of contract.
In June of 1973, Rosenthal and Bond filed a written stipulation that their interests in the property were undivided 281/600 and 319/600, respectively. The court at the trial in July found the interests in the property to be as stipulated, and decreed that no other parties to the action had any interest therein. O'Neill appeals.

I.
O'Neill contends that the trial court should have ruled that Rosenthal had acquired title by adverse possession against her other co-tenants. We disagree.
Rosenthal's claims to ownership of the remaining interests in the property are not supported by the evidence. There is nothing *526 of record showing any transfer of title from A. I. Sandusky. The tax notices are listed in the name of his estate, taxes were paid and, when not paid, were redeemed by Rosenthal on behalf of the estate, and she testified that whatever possession she had was on behalf of herself and her brothers and sisters.
Further, the co-tenancy created by the death of A. I. Sandusky cannot be changed to single ownership in one co-tenant by adverse possession unless and "[u]ntil an actual ouster of the co-tenants had been established by conduct apart from mere use and occupation of the land...." Fallon v. Davidson, 137 Colo. 48, 320 P.2d 976. There is no evidence of ouster of her co-tenants or of color of title in Rosenthal to the exclusion of the others. Absent such, "possession of one co-tenant is possession of all." Fallon v. Davidson, supra; Hed v. Pullara, 128 Colo. 244, 261 P.2d 509; Rose v. Roso, 119 Colo. 473, 204 P.2d 1075.

II.
O'Neill also contends that the court erred in its ruling that he could not obtain specific performance of the Option because he failed to set up a proper escrow. We disagree.
This was an option. Under its terms, O'Neill had the right to buy the property on certain conditions. Included therein were the requirements, obviously for the seller's benefit, that the $21,000 balance of the purchase price be escrowed with the bank and that this be done by February 15, 1972. This was not done.
"In order that an instrument may operate as an escrow, not only must there be sufficient parties, a proper subject matter, and a consideration, but the parties must actually and validly contract with respect thereto, and the deposit of the instrument in pursuance of such contract must be absolute and beyond the control of the depositor ... otherwise the instrument so deposited can be withdrawn by the depositor." 30A C.J.S. Escrows § 2. See Barnes v. Spangler, 93 Colo. 254, 25 P.2d 732.
Here there was no escrow agreement between the parties and the bank, the money was put up late, and the deposit was not absolute. The money was never out of O'Neill's control, and in fact was withdrawn at O'Neill's will.
Strict compliance with the terms of an option is required. By failing to comply with the escrow provisions, O'Neill lost any right to pursue his claim for specific performance under the Option. Miller v. Carmody, 152 Colo. 353, 384 P.2d 77. Thus, when Rosenthal, who was unable to deliver merchantable title, followed the Option provisions and refunded the $1,500 deposit to O'Neill before he tendered the purchase price or any portion thereof, the Option terminated and each party was released from any further obligations to the other.

III.
O'Neill contends further that he is entitled to partial specific performance of the Option, with a reduction in purchase price, and that, therefore, the court erred in concluding he had no interest in the property. The provision for merchantable title was for his benefit. In the ordinary case, as buyer, he could have waived the requirement and agreed to take less than full title for a reduced price. See Murdock v. Pope, 156 Colo. 7, 396 P.2d 841; Prosser v. Schmidt, 118 Colo. 502, 197 P.2d 318. However, not having himself complied with the conditions of the Option, O'Neill is in no position to require the optionor to perform. Miller v. Carmody, supra.

IV.
As to O'Neill's claim of error in the denial of his counterclaims for damages, there was evidence to support the court's finding that: "There was no fraud or unfair conduct or improper or unfair collusion between the plaintiff and intervenor Bond practiced upon intervenor *527 O'Neill or his partners." There being such evidence, we must affirm. Linley v. Hanson, 173 Colo. 239, 477 P.2d 453.

V.
O'Neill objects to the court's entering judgment against him for Rosenthal's $100 costs in payment of the court-appointed attorney for the unknown defendants in the quiet title suit. The court, at time of hearing on O'Neill's objections to cost bills, reduced by $25 the $100 court-appointed attorney fee cost on the basis that $25 would have been the fee absent trial. Allowing the balance against the losing party was proper. C.R.C.P. 54(d).
O'Neill also challenges the court's award of $497 against him in payment for the costs of the taking of his depositions. The allowance of this charge, when he was available for and attended the trial, cannot be upheld. Morris v. Redak, 124 Colo. 27, 234 P.2d 908. The judgment is modified so as to reduce the amount of costs awarded to Bond by $497.
Judgment modified, and, as modified, affirmed.
PIERCE and RULAND, JJ., concur.