595 P.2d 696 (1979)
SPORTS PREMIUMS, INC., Plaintiff-Appellant,
v.
John R. KAEMMER, Julia D. Kaemmer, the Bank of Vail, a corporation, Slifer & Company, a corporation, F. Charles Duryea, Jr., Dorothy C. Duryea, and Gore Valley Title, Inc., Defendants-Appellees.
No. 77-1086.
Colorado Court of Appeals, Div. III.
February 8, 1979.
Rehearing Denied March 8, 1979.
Certiorari Denied May 14, 1979.
*697 Cosgriff, Dunn & French, John W. Dunn, Leadville, Jim K. Choate, Dallas, Tex., for plaintiff-appellant.
*698 Stewart H. Brown, Vail, for defendants-appellees John R. Kaemmer, Julia D. Kaemmer and Bank of Vail.
Bader & Dufty, Robert J. Dyer, III, Denver, for defendants-appellees Slifer & Co. and Gore Valley Title, Inc.
No appearance for defendants-appellees F. Charles Duryea, Jr. and Dorothy C. Duryea.
STERNBERG, Judge.
Sports Premiums, Inc., appeals the denial of its claim to be declared the owner of a condominium unit in Vail. The trial court found the unit was owned by the defendants Kaemmers. We affirm.
Plaintiff, Sports Premiums, Inc., and defendants, the Duryeas, owned units in the All Seasons Condominiums in Vail. The Duryeas entered into a contract on July 10, 1975, to sell their unit to the Kaemmers. However, the condominium declaration gave a right of first refusal, a preemptive option, to all owners of units in All Seasons.
The declaration provided that should a unit owner receive a bona fide offer from a prospective purchaser, the owner was required to give immediate written notice thereof and a copy of the offer to the board of managers for all the owners. The declaration further stated:
"The remaining unit owners through the Board of Managers, or a person named by them, shall have the right to purchase or lease the subject apartment upon the same terms and conditions as set forth in the offer therefor, provided written notice of such election to purchase or lease is given to the selling or leasing owner, and a matching down payment or deposit is provided to the selling or leasing owner during the 20 day period immediately following the delivery of the notice of the bona fide offer and copy thereof to purchase . . . ." (emphasis added)
The Duryea-Kaemmer contract provided for a sales price of $65,000 with an earnest money deposit of $2,000 and the balance of $63,000 due as provided in the contract. It further provided:
"1. Contract is contingent upon purchaser obtaining a loan of at lease (sic) 80% ($52,000) at an interest rate not to exceed 9½% and for a period of at least 20 years. Said loan must be obtained within 25 days of this contract or contract is null and void and all earnest monies shall be returned to purchaser.
2. Contract is subject to the Right of First Refusal of the All Seasons Condominium Association.
3. The balance of $11,000 to be paid in cash or certified funds upon closing.
. . . . .
4. Title shall be merchantable in the seller. Subject to payment or tender as above provided in compliance with the other terms and conditions hereunder by purchaser, the seller shall execute and deliver a good and sufficient general warranty deed to said purchaser on 8 August, 1975, or, by mutual agreement, at an earlier date . . . .
. . . . .
9. Time is of the essence hereof, and if any payment or any other condition hereof is not made, tendered, or performed by purchaser as herein provided, then this contract shall be null and void and of no effect, and both parties hereto released from all obligations hereunder, and all payments made hereon shall be retained on behalf of the seller, as liquidated damages."
Defendant Slifer & Company, the Duryeas' real estate agent, gave notice to All Seasons Board of Managers on July 16, 1975, and the board notified the other unit owners on July 18. Sports Premiums, Inc., received the notice on July 22 and by letter dated July 29 sent a $2,000 check and advised the board it elected to purchase the unit on "the terms, conditions, and considerations expressed in said notice."
The board of managers determined the closing date had to be set back to August 11, because of their policy of allowing three days for mailing notice to the unit owners. The Kaemmers and Duryeas agreed in writing to extend their closing date to August 11.
*699 The trial court found that during a telephone conversation between a Slifer representative and one Hamilton, the president of Sports Premiums, on August 1, Hamilton was told that the closing date was set for August 11; but that it was Hamilton's stated position at that time, and in a subsequent letter, that the closing date was August 23, thereby appropriating to Sports Premiums' benefit the condition of the Kaemmers' contract of 25 days to obtain a loan.
On August 6, another unit owner gave notice of her intent to exercise the right of first refusal on the unit. To determine who would be the purchaser between Sports Premiums and this unit owner, All Seasons conducted a drawing on August 11 in Denver. Sports Premiums won and the other unit owner abandoned her claim. Hamilton was in Dallas on that day; and the trial court found that repeated calls were made to him, but he was unavailable, although he called other parties on that day.
Consequently, on August 12 the Duryeas closed on the contract with the Kaemmers. Hamilton heard of the closing, and he tendered a check on August 15 for the entire amount of the purchase price, which the Duryeas did not cash. Sports Premiums then brought suit under C.R.C.P. 105 to determine the rights of the parties to the unit and for damages.
On appeal Sports Premiums argues that the trial court erred in not allowing it a reasonable time to close after being designated as the unit owner entitled to exercise the right of first refusal. Sports Premiums contends that it was only required to give notice and tender the matching downpayment within the 20 days to complete the exercise of the right; that where there are two owners exercising the right of first refusal, the right does not vest until by some means it is determined which owner can proceed (in this instance the drawing on August 11) and that there being nothing in the condominium declaration or the Kaemmer contract specifying the time the preemptioner was to perform its obligations, the law implies a reasonable time.
We disagree with Sports Premiums posturing the transaction in this manner. Indeed, the above argument as put forth in its brief is inconsistent with counsel's oral argument that once Sports Premiums gave notice and tendered payment, the preemptive option ripened into a binding contract between the Duryeas and Sports Premiums, which the Duryeas could have enforced against Sports Premiums had it not performed. Rather, we view the requirements of a unit owner exercising a right of first refusal as one transaction. This is tantamount to a preemptive option, as opposed to an ordinary option, because a preemptive option does not give the optionee the power to compel an unwilling owner to sell; it merely requires that when and if the owner decides to sell, he offer the property first to the person holding the preemptive right. See Mercer v. Lemmens, 230 Cal.App.2d 167, 40 Cal.Rptr. 803 (1964).
The condominium declaration sets forth the steps required of the unit owner to complete the exercise of the preemptive option. The language of the declaration requires notice, matching downpayment within 20 days and purchase on the same terms as the offer of the third-party purchaser. The clear intent of the condominium declaration is to give unit owners an equal opportunity to purchase as that of a third party, but no more.
Strict compliance with the terms of the option is required for its exercise. Shull v. Sexton, 154 Colo. 311, 390 P.2d 313 (1964); Rosenthal v. Sandusky, 35 Colo.App. 220, 533 P.2d 523 (1975). Compliance with the closing date as stated in the Kaemmers' contract, with its significant "time is of the essence" clause, was required. See Dunton v. Stemme, 117 Colo. 327, 187 P.2d 593 (1947); Loveland v. Fisk, 18 Colo. 201, 32 P. 276 (1893). In general, if an option is not exercised within the time specified, the rights of the optionee expire, the optionee is not entitled to notice and the seller has no further obligations to him. See Miller v. Carmody, 152 Colo. 353, 384 P.2d 77 (1963); Dunton Mortgage Co., Inc. v. Breymaier, 136 Colo. 343, 316 P.2d 1048 (1957); and *700 Goldstein v. Allen, 306 F.2d 711 (10th Cir. 1962).
Thus, when Sports Premiums failed to complete the exercise of preemptive rights within the time requiredAugust 11the Duryeas were free to sell to whomever they chose.
When the transaction is viewed in this light, Sports Premiums' argument that the preemptive right ripened into an enforceable right on August 11 and that it then had a reasonable time to close, misses the mark. Similarly Sports Premiums is in error in relying on Shull, supra, for the proposition that the law demands an optionee have a reasonable time to examine title and a proposed deed. Shull is authority in cases in which the option contract stipulates no date for closing after the exercise of the option. Finally, on this point, as the trial court noted, the closing provision of the Kaemmers' contract "did not render plaintiff's first refusal rights either impossible or reasonably impracticable."
Plaintiff had 20 days to prepare for closing, which was ample. Plaintiff and the other exercising unit owner need not have set the drawing date for the date set for closing. That several competing unit owners might necessarily prepare to close, only for naught because one should lose in a drawing, is not the concern of the seller. The seller need only comply with the terms of the declaration by holding open the right of first refusal for the 20-day period stated therein.
The Duryeas did not render the preemptive right illusory here. They provided the preemptioners with exactly the rights to which they were entitled. To allow a preemptioner a longer time to close than a third party purchaser would be to grant the preemptioner a greater right, and alter the third party purchase contract, in derogation of the purpose of the condominium declaration.
In the alternative, Sports Premiums asserts that according to the contract it was entitled to the Kaemmers' 25 days to obtain a loan, thereby setting the closing on August 23.
This argument is not persuasive. If Sports Premiums were given 25 days to obtain financing and then could not do so, the Duryeas, the sellers, would be in an untenable position, in that the third-party purchasers, the Kaemmers, might no longer wish to buy and the preemptioner's performance would be excused because the condition precedent did not arise. The upshot of all this would be that the Duryeas could end up 25 days later with no buyers. Likewise, to give plaintiffs longer to close than the Kaemmers' date of August 11 would be to ignore the clause in the condominium declaration providing for "purchase on the same terms."
Sports Premiums also contends it could not have closed on August 11 if it had wanted, because it had not received a title commitment as stated in the Kaemmer contract. As the trial court noted, "This is pure afterthought." Plaintiff contended it was entitled to close on August 23, and the record does not reveal that plaintiff gave as a reason for failure to close on August 11, the lack of title commitment. It is therefore not a ground available to plaintiff now. See Metropolitan Paving Co., Inc. v. City of Aurora, 449 F.2d 177 (10th Cir. 1971); Bicknell v. Vollmuth, 112 Colo. 207, 147 P.2d 478 (1944).
Plaintiff joined as defendants below Slifer and Company, Land Title Guarantee Company, and its agent, Gore Valley Title Company, claiming "unlawful inducement of breach of contract." The trial court found no liability on the part of any of the defendants. Slifer and Company and Gore Valley Title Company now allege that naming them as defendants on appeal was "frivolous and vexatious," and request attorneys fees for this appeal pursuant to § 13-17-103, C.R.S.1973 (1978 Cum.Supp.) and for damages and costs of appeal pursuant to C.A.R. 38.
We deny this relief, because we do not think this appeal was frivolous. Indeed, had we reversed and remanded as requested by Sports Premiums these defendants would be proper parties.
*701 Finding no error in the trial court's conclusion that the Duryeas were free to sell to the Kaemmers on August 11, and that damages for a frivolous appeal are not warranted, we affirm the judgment.
SMITH and RULAND, JJ., concur.