William L. **PARRY** and June H. Parry, Plaintiffs-Appellees,

v.

Richard F. **WALKER,** Defendant-Appellant.

No. 81CA1043.

Colorado Court of Appeals, Div. I.

Dec. 2, 1982.

Blockwich, Garn & Neiley, Craig N. Blockwick, Aspen, for plaintiffs-appellees.

Barry D. Edwards, Aspen, for defendant-appellant.

KELLY, Judge.

The defendant, Richard F. Walker, appeals the trial court judgment granting the plaintiffs, William L. and June H. Parry, damages and specific performance of a receipt and option contract. The contract upon which specific performance was granted was one between Walker and James Morrison which the trial court ruled had been preempted by the plaintiffs' exercise of a right of first refusal contained in a condominium declaration of Snowmass Mountain Condominiums. The primary question before us is whether the plaintiffs exercised their option according to its terms. We conclude, as did the trial court, that the option was properly exercised, and accordingly, we affirm.

The facts as found by the trial court are substantially undisputed. On August 23, 1978, Walker agreed to sell his condominium unit to James Morrison (Morrison contract). As required by the condominium declaration, Walker sent written notice of the Morrison contract to the Parrys, and on September 29, 1978, the Parrys notified the condominium association by letter of their intention to exercise the option. On the same date, the Parrys also delivered the same letter to Walker's real estate agent.

In the letter, the Parrys agreed, among other things, to purchase Walker's unit "under the same terms and conditions of the certain Receipt and Option contract" between Walker and Morrison. A check for ten percent of the purchase price accompanied the letter, this being the amount of the down payment agreed upon in the Morrison contract.

At the request of Walker's real estate agent, the Parrys also signed a standard form receipt and option contract (Parry contract), which contained substantially the same terms as the Morrison contract except that the proposed Parry contract called for an assumption of Walker's then existing loan on the unit, while the Morrison contract contained a new financing contingency. Walker could not close on October 17, 1978, as scheduled, because necessary steps had not been taken to secure release of a second deed of trust. No further closing date having been established, the Parrys brought this action for specific performance and damages.

From these facts, the trial court concluded that the Parry letter constituted an ex-

ercise of the preemptive option and that they had thereby bound themselves to perform under the terms of the Morrison contract. Accordingly, it ruled that the Parry contract containing the different financing provision was irrelevant.

Walker asserts that the conclusions of the trial court were erroneous as a matter of law. He argues that the letter from the Parrys purporting to exercise the preemptive option was not a proper exercise of that option because the Parry contract was a counteroffer which did not result in a contract. We disagree.

■ The purpose of a condominium declaration providing for a preemptive option for unit owners is to give the unit owners an opportunity to purchase which is equal to that of third parties. *Sports Premiums, Inc. v. Kaemmer,* 42 Colo.App. 172, 595 P.2d 696 (1979). "The general rule ... is that the property owner has a contractual obligation to offer the property to the holder of a right of first refusal on the same terms and conditions on which the third-party offer was made to the owner." *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 26 Wash.App. 111, 612 P.2d 422 (1980). And, "strict compliance with the terms of the option is required." *Sports Premiums, Inc. v. Kaemmer, supra.*

■ However, general contract principles apply to preemptive options in condominium declarations, *Northwest Television Club, Inc. v. Gross Seattle, Inc., supra,* and there must be an unequivocal acceptance in order to create a contract. That "acceptance must comply exactly with the requirements of the offer, omitting nothing from the promise or performance requested." 1 *Restatement of Contracts* §§ 58 and 59.

Here, the condominium declaration required that a copy of any bona fide offer was to be submitted to the condominium association and to the other condominium owners. It provided further that:

"The remaining owners, individually or collectively, shall have the right to purchase or lease the subject unit upon the same terms and conditions as set forth in the offer therefor, provided written notice of such election to purchase or lease is given to the selling or leasing owner, or his agent, together with a matching down payment or deposit during the twenty-day period immediately following the receipt of the notice of the offer to purchase or lease, and provided the initial offer was not made by an owner. Such notice shall also be delivered to the association."

The Parrys' September 29 letter to Walker's agent and to Snowmass Mountain Condominium Association states as follows:

"Pursuant to the provisions of Article VII of the condominium declaration for Snowmass Mountain Condos we hereby give notice to exercise our right of first refusal to purchase unit F–1. We will purchase said unit under the same terms and conditions of that certain receipt and option contract between Richard F. Walker, trustee as seller and James M. Morrison as purchaser. Our matching down payment of $11,800.00 is enclosed."

■ We agree with the trial court that this letter complies with all of the requirements set forth in the condominium declaration for a proper exercise of the right of first refusal.

Walker, however, argues that, because the proposed Parry contract accompanied the Parry letter and because the Parry contract contained financing terms at variance with those in the Morrison contract, the documents are not an acceptance of the offer, but are a counteroffer. We disagree.

■ It is true that a purported acceptance which adds qualifications or requires performance of conditions is not an acceptance. *Restatement (Second) of Contracts* § 60. But, it is also true that:

"An expression of acceptance is not prevented from being exact and unconditional by the fact that it is 'grumbling,' or that the offeree makes some simultaneous 'request'; but it must appear that the 'grumble' does not go so far as to make it doubtful that the expression is really one of assent, and that the offeree

has assented to the offer even though the offeror shall refuse to comply with the 'request.'" 1 *A. Corbin, Contracts* § 84. *See Seethaler v. Industrial Commission,* 660 P.2d 11 (Colo.App.1982).

That is precisely the situation here. The Parrys' acceptance was not made to depend on Walker's assent to the changed financing terms. *See Restatement (Second) of Contracts* § 62. The Parrys were bound by their September 29 letter to purchase the unit on the terms and conditions of the Morrison contract, and the trial court correctly so ruled.

Walker's argument that there was insufficient evidence to warrant the trial court's conclusion that the Parrys were excused from tendering performance on October 17, 1978, is without merit. Although Walker purports to attack the sufficiency of the evidence, he really argues that the trial court improperly considered evidence not within the scope of the pleadings. We conclude that the rulings of the trial court were within the intendment of C.R.C.P. 15(b).

The other issues on which Walker seeks our determination are not properly before us. C.R.C.P. 59(f); *Barker v. Colorado Region-Sports Car Club of America, Inc.,* 35 Colo.App. 73, 532 P.2d 372 (1974).

Judgment affirmed.

COYTE and PIERCE, JJ., concur.