The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 1, 2019

## 2019COA120

**No. 18CA1200, *Filatov v. Turnage* — Contracts — Right of First Refusal — Computation of Time**

A division of the court of appeals considers an issue of contract interpretation involving a right of first refusal and calculations of time.  The division concludes that, under this contract, the first day was excluded and the last day was included when calculating the period for exercising the right of first refusal. The division further concludes that where the contract provided that the exercise period began "immediately following the delivery of the notice," the clock began running when the agent of the party that held the right of first refusal received the required notice.

Court of Appeals No. 18CA1200
Eagle County District Court No. 16CV30439
Honorable Frederick W. Gannett, Judge

Anna Filatov,

Plaintiff-Appellant,

v.

Mark F. Turnage and Natalie F. Bocock Turnage,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE GROVE
Hawthorne, J., concurs
Taubman, J., specially concurs

Announced August 1, 2019

Porterfield & Associates, LLC, Wendell B. Porterfield, Jr., Vail, Colorado, for
Plaintiff-Appellant

Range, LLP, Kevin C. Paul, Cynthia A. Coleman, Eric R. Jaworski, Denver,
Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Anna Filatov, appeals the district court's entry of summary judgment in favor of defendants, Mark F. Turnage and Natalie F. Bocock Turnage, which declared that they had timely exercised their right of first refusal to purchase a condominium unit in Vail. We reverse.

## I.     Background

¶ 2     Filatov entered into a contract to buy a condominium unit in Vail. Under the terms of the condominium declaration, Filatov's purchase of the unit was subject to the Turnages' right of first refusal.

¶ 3     The condominium declaration required a unit owner who received a bona fide offer from a prospective purchaser to give written notice and a copy of the offer to the condominium board of managers (the board). The board was, in turn, required to advise the owners of other units in the same building of the offer in accordance with the procedures outlined in the association's bylaws. To exercise the right of first refusal, an owner needed to notify the seller in writing and make a matching down payment or

1

deposit "during the 20 day period immediately following the delivery of the notice of the bona fide offer and copy thereof."

¶ 4     The material facts are undisputed.  On November 7, 2016, the selling owners — who are not part of this appeal — properly notified the board that they had accepted an offer to purchase their unit. The next day, consistent with the procedure outlined in the association's bylaws, the board advised the remaining condominium owners of the pending sale and their right of first refusal.  The board's notice letter stated that November 8, 2016, was "the first day of the twenty-day period in which an Owner may exercise the Right of First Refusal," and that an owner wishing to exercise the option must do so by November 27, 2016.

¶ 5     On Friday, November 25, 2016, the Turnages notified the condominium association of their intent to exercise the right of first refusal.  They deposited the required earnest money the following Monday, November 28, 2016 — a day after the deadline that appeared in the board's notice letter.

¶ 6     Filatov sued both the Turnages and the sellers, seeking a declaration that, because the Turnages deposited their earnest

2

money after the deadline, their attempt to exercise the right of first refusal was ineffective. The sellers did not substantively participate in the district court. After a period of discovery, Filatov and the Turnages filed cross-motions for summary judgment.

¶ 7    Concluding that the Turnages had timely exercised their right of first refusal, the district court granted the Turnages' motion for summary judgment and denied Filatov's. The district court observed that the board advised the Turnages of Filatov's offer on November 8. Then, citing the commonly accepted principle that, in calculations of time, the first day of a fixed period is typically excluded and the last day is included, the district court found that "[t]wenty days from November 8th . . . is November 28th." Accordingly, the district court found that the Turnages' option to purchase the property did not expire until November 28, 2016 — the date that they deposited the earnest money. Filatov appeals that ruling.

## II.     Analysis

¶ 8     Filatov contends that the district court erred in granting summary judgment for the Turnages because the earnest money was not timely deposited with the seller.  We agree.

### A.     Standard of Review

¶ 9     Summary judgment is a drastic remedy, appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56(c); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008).  We review a summary judgment ruling de novo.  *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11.  Similarly, interpretation of a covenant is a question of law that we review de novo. *Evergreen Highlands Ass'n v. West*, 73 P.3d 1, 3 (Colo. 2003).

### B.     Applicable Law

¶ 10     We must follow the dictates of plain English in interpreting a covenant, and we will enforce as written a covenant that is clear on its face.  *See Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n*, 773 P.2d 1046, 1048 (Colo. 1989); *Rossman v. Seasons at Tiara Rado Assocs.*, 943 P.2d 34, 36 (Colo. App. 1996).  "Extraneous evidence is only admissible to prove intent where there

4

is an ambiguity in the terms of the contract," and absent any ambiguity, "we will not look beyond the four corners of the agreement in order to determine the meaning intended by the parties." *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997). Moreover, disagreement between the parties "regarding the interpretation of the contract does not itself create an ambiguity in the contract." *Id.*

¶ 11    A right of first refusal is tantamount to a preemptive option "because a preemptive option does not give the optionee the power to compel an unwilling owner to sell; it merely requires that when and if the owner decides to sell, he offer the property first to the person holding the preemptive right." *Sports Premiums, Inc. v. Kaemmer*, 42 Colo. App. 172, 176, 595 P.2d 696, 699 (1979). Generally, the preemptive option creates a contractual obligation for the property owner to offer the subject property to the holder of a right of first refusal on the same terms and conditions as the third-party offer made to the owner. *Parry v. Walker*, 657 P.2d 1000, 1002 (Colo. App. 1982); *see also Stuart v. D'Ascenz*, 22 P.3d 540, 541-42 (Colo. App. 2000). A right of first refusal is strictly

construed, *Kaiser v. Bowlen*, 200 P.3d 1098, 1103 (Colo. App. 2008), and "[s]trict compliance with the terms of the option is required for its exercise." *Sports Premiums*, 42 Colo. App. at 176, 595 P.2d at 699.

## C.    Application

### 1.    Plain Language

¶ 12    The right of first refusal is established by the declaration,[1] which, in pertinent part, provides as follows:

> If any owner of a condominium unit . . . wishes to sell . . . such unit and receives a bona fide offer therefor from a prospective purchaser . . . , the remaining owners of units within the same building shall be given written notice thereof, together with a true copy of such offer. Such notice and copy shall be given to the Board of Managers for all of such owners. Such remaining owners shall have the right to purchase . . . such unit upon the same terms and conditions as set forth in said offer

---

[1] The record includes only portions of the condominium declaration. The portions submitted by each party are formatted differently and contain slightly different language.  For example, the declaration submitted by Filatov does not include the entire right of first refusal section and the declaration submitted by the Turnages, although inclusive of the entire relevant section, includes a typographical error: "the remaining owner [sic] of units."  We nevertheless address the issues raised because there is no indication that the declarations in the record were not the governing agreements and, in any event, the error identified above is immaterial to the issues raised.

6

provided, however, that written notice of such election to purchase . . . and a matching down payment or deposit is given to the owner during the 20 day period immediately following delivery of the notice of the bona fide offer and copy thereof. The method by which the Board of Managers shall advise the other owners of such bona fide offer . . . shall be provided in the Association's By-Laws.

¶ 13     This provision, together with the bylaws, contemplates the following course of events when a selling owner receives a bona fide offer:

- The owner provides written notice of the offer to "the remaining owners of units within the same building." The seller need not notify each owner individually, however. Rather, the notice "shall be given to the Board of Managers for all of such owners."

- Upon delivery of the notice, the board must advise the remaining owners of the offer using the procedures outlined in the association's bylaws. The bylaws require the board to "promptly give notice to the remaining owners" by regular mail addressed to the registered addresses of the owners.

7

- The remaining owners have the right to purchase the unit "upon the same terms and conditions as set forth in said offer."

- To exercise the right to purchase the unit, an owner must give "written notice of such election to purchase . . . and a matching down payment or deposit . . . to the owner during the 20 day period immediately following delivery of the notice of the bona fide offer and copy thereof."

¶ 14 While the parties agree that these provisions are unambiguous, they disagree as to how they should be interpreted. Most importantly, they dispute which event — Filatov's notice to the board, or the board's advisement to the owners — triggered the start of the twenty-day clock. They also dispute whether, assuming that Filatov's notice to the board was the triggering event, the Sunday expiration of that twenty-day deadline should have rolled over to the following Monday. We address each contention in turn.

2. The Sellers' Notice to the Board Started the Clock

¶ 15 The parties' core disagreement is over which event started the Turnages' twenty-day clock. Filatov argues that the triggering event

8

was the sellers' notice to the board, which was sent and received on November 7, 2016. The Turnages maintain that the clock began to run, at the earliest, on November 8, when the board advised them of the pending offer. The district court agreed with the Turnages and, noting that time calculation for an identified period typically excludes the first day and includes the last day, concluded that "[t]wenty days from November 8th . . . is November 28th." Thus, the district court ruled, the Turnages timely exercised the right of first refusal by depositing the earnest money on November 28, 2016.

¶ 16 Strictly construing the declaration, as we must, *see Kaiser*, 200 P.3d at 1103, we hold that the seller's notice to the board, rather than the board's letter to the remaining owners advising them of that notice, triggered the twenty-day clock. We reach this conclusion primarily because the declaration itself distinguishes the seller's notice "to the Board of Managers for all of such owners" from the board's advisement to the owners that it has a bona fide offer in hand. It does so by employing different terminology, "notice" and "advise," to describe the two phases of the right of first

refusal process. *See NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 851 N.Y.S.2d 551, 557 (N.Y. App. Div. 2008) ("The use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings."). Once the seller provides "notice" to the board, which accepts that notice "for all of such owners," the board must "advise the other owners of such bona fide offer." But the twenty-day clock is not tied to the board's *advisement* to the remaining owners. Instead, the declaration provides that the right of first refusal must be exercised during the twenty-day period immediately following delivery of the *notice*. The declaration, then, is unambiguous: the period for exercising the right of first refusal begins "immediately following delivery" of the seller's notice to the board.

¶ 17      Accordingly, the "notice" contemplated by the declaration was complete upon delivery by the sellers of the written notice and a true copy of Filatov's offer to the board on November 7, 2016. Under the plain language of the declaration, as well as settled principles of contract interpretation, the day that the sellers delivered the notice to the board was excluded from the period in

10

which the Turnages could exercise their right of first refusal.[2]  *See, e.g., Buehner Schokbeton Co. v. Horn's Crane Serv. Co.*, 500 P.2d 140, 141 (Colo. App. 1972) (not published pursuant to C.A.R. 35(f)) ("The general rule applied to the computation of time under this type of contract provision is that the first day is excluded and the last day is included in computing the time within which the act may be performed."); *cf.* § 2-4-108(1), C.R.S. 2018 ("In computing a period of days, the first day is excluded and the last day is included.").  The Turnages could, however, exercise their right of first refusal at any point during the *next* twenty days, beginning on November 8 and ending on November 27.  The board's November 8 letter to the Turnages (and all other eligible owners) accurately reflected this, stating that "[t]he date of this letter is the first day of the twenty-day period in which an Owner may exercise the Right of First Refusal," and that any eligible owner who wished to exercise the right must do so by November 27, 2016.

---

[2] Giving the term its common and ordinary meaning, "following," in the present context, must mean "subsequent to" delivery of the selling owner's notice to the board.  Merriam-Webster Dictionary, https://perma.cc/5W4Y-V9SX.

11

¶ 18    Because they did not deposit their earnest money until Monday, November 28, the Turnages did not meet this deadline.[3] The untimeliness of their deposit, however, does not end our inquiry because we still must address the Turnages' other arguments as to why it should be considered timely.  We do so below.

### 3.    Adequacy of the Notice

¶ 19    The Turnages assert that a seller's notice to the association should not start the twenty-day clock because the board's advisement might not be sufficiently prompt, or might not come at all, thereby effectively shortening or perhaps even eliminating as a practical matter any opportunity for them to timely exercise their right of first refusal.  Interpreting the declaration to allow for such a delay, the Turnages maintain, is contrary to its intent, which is "to

---

[3] We are not persuaded otherwise by *Sports Premiums, Inc. v. Kaemmer*, 42 Colo. App. 172, 595 P.2d 696 (Colo. App. 1979). While *Sports Premiums* involved a virtually identical right of first refusal appearing in a condominium declaration, the court was not called upon to determine whether it was the seller's notice or the board's advisement that started the clock.

give the unit owners an opportunity to purchase which is equal to that of third parties." *Parry*, 657 P.2d at 1002.

¶ 20 This argument misperceives the role of the board as defined by the declaration — and as agreed to by the Turnages when they purchased their existing unit. By stating that "[s]uch notice and copy [of the offer] shall be given to the Board of Managers *for all of such owners*" (emphasis added), the declaration designates the board as the agent of those owners who are eligible to exercise a right of first refusal. Far from rendering superfluous the requirement that "the remaining owners of units within the same building shall be given written notice . . . of such offer," this designation effectuates that mandate by creating an efficient and predictable process for all owners — whether they are selling or potentially buying those units — to follow. Indeed, employing the board as an agent of the owners for this limited purpose confers a substantial benefit on selling owners by providing a single point of contact for delivery of the notice. And on the other side of the coin, it also provides certainty for owners who are eligible to exercise the

13

right of first refusal by ensuring that the same deadline applies to any of them who may wish to purchase the property.

¶ 21    Notice to an agent is notice to the principal.  *See Brown Grain & Livestock, Inc. v. Union Pac. Res. Co.*, 878 P.2d 157, 158 (Colo. App. 1994); *see also* Restatement (Third) of Agency § 5.02 (Am. Law Inst. 2006).  We thus reject the Turnages' suggestion that a failure on the part of the board to timely advise them of a pending offer (which did not happen here in any event) would undermine the purpose of the covenant.  As the declaration makes clear, the bylaws prescribe the method by which the board must advise the eligible owners that an offer has been made.  To the extent that those owners are dissatisfied with the mechanism by which the board advises them of an offer that would trigger the right of first refusal, they are free to revise the bylaws in a way that ensures punctual receipt of that information.  They may also enact provisions designed to ensure that the board, as it did here, promptly transmits the information utilizing the method or methods that the bylaws prescribe.  For the purposes of this case, though, concerns about the adequacy of the bylaws or the board's

14

compliance with them involve issues of internal governance that have no bearing on our interpretation of the plain language of the declaration.

### 4. The Turnages Had An Opportunity to Purchase That Was Equal to Filatov's

¶ 22  We also reject the Turnages' suggestion that strict compliance with the twenty-day period for exercising the right of first refusal deprived them of their right to have the same opportunity to purchase the unit as Filatov (or any other third party).  *See Parry*, 657 P.2d at 1002.  The Turnages argue, for example, that the terms of Filatov's real estate contract — which rolled deadlines falling on a weekend or holiday over to the next business day — should have applied to their deposit of the earnest money.  They also suggest that the *sellers* "failed to afford the Turnages their [right of first refusal]" because they first learned "from the seller[s'] representative that they were to pay the earnest money to Land Title Guarantee Corporation on the morning of Saturday, November 26, 2016, when it was no longer possible to make the payment until Monday, November 28, 2016."

¶ 23    We are not persuaded by these arguments.  With respect to the contract, the Turnages were not a party, were not in privity with the buyer or sellers, and were not third-party beneficiaries.  And surely, if the shoe were on the other foot, and the purchase and sale agreement purported to *shorten* the twenty-day period for exercising the right of first refusal, the Turnages would not argue that Filatov's contract should be read as derogating the rights afforded to them by the condominium declaration.

¶ 24    The Turnages' attempt to attribute their noncompliance with the deadline to the sellers' representative is equally unavailing.  Simply put, strict compliance with the terms of the right of first refusal was incumbent on the party who intended to exercise that right.  Nothing in the record suggests that either Filatov or the sellers (who are in any event not a party to this appeal) are in any way at fault for the Turnages' untimely deposit of the earnest money.

### III. Conclusion

¶ 25     We reverse the district court's order granting summary judgment for the Turnages, and remand with instructions to enter judgment in Filatov's favor.

JUDGE HAWTHORNE concurs.

JUDGE TAUBMAN specially concurs.

JUDGE TAUBMAN, specially concurring.

¶ 26    I agree with the majority that the twenty-day period for defendants, Mark F. Turnage and Natalie F. Bocock Turnage, to exercise their right of first refusal began with the date of the sellers' notice to the board of condominium managers that they had accepted an offer to purchase their condominium.  Under the circumstances presented here, I also agree with the majority and plaintiff, Anna Filatov, that the Turnages did not timely exercise that right.

¶ 27    I write separately to emphasize my view that the Turnages' exercise of their right of first refusal was untimely because the board promptly sent notice of the sellers' intent to sell their condominium, as was required by the bylaws.  As I explain below, a significant delay by the board in sending notice to the condominium owners would not only violate the bylaws but would render invalid the board's notice to condominium members of their right of first refusal.

¶ 28    As the majority explains, the condominium declaration here requires the condominium board, on receipt of a notice that a

18

condominium owner has received a bona fide offer of intent to purchase, to notify all other owners of the offer utilizing the procedures set forth in the association's bylaws.  The bylaws, in turn, provide that the condominium board must then "promptly give notice to the remaining owners in the manner provided for notice of meetings . . . ."

¶ 29    Here, the sellers' notice to the board was sent and received on November 7, 2016.  The following day, November 8, the board sent the notice to the condominium owners.  Indeed, the Turnages acknowledge that the sellers' contract was emailed to the condominium managers on a Monday evening and mailed to the other condominium owners the next day.  Thus, there can be no question that the board promptly sent the notice to the other condominium owners.

¶ 30    As noted, the condominium declaration affords other condominium owners a twenty-day period to provide a written notice of exercise of an owner's election to purchase and a matching down payment or deposit to the selling owner.  The longer the

condominium board delays in providing notice, the less time prospective buyers have to exercise their right of first refusal.

¶ 31     As a division of our court has held, "[c]ontracts should be construed to give effect to the intent of the parties.  The intent of the parties should be determined from the entire contract, and effect must be given to every provision if possible." *Lawrence St. Partners, Ltd. v. Lawrence St. Venturers*, 786 P.2d 508, 510 (Colo. App. 1989).

¶ 32     It seems clear that the reason for the twenty-day period in the declaration is to provide condominium owners a reasonable period to assess whether the selling price of a condominium unit is reasonable, and, if so, to enable interested condominium owners to determine whether they have — or could obtain — funds for a down payment or deposit and to otherwise obtain financing, if necessary, for purchase of that condominium.  If the condominium board delays four or five days, for example, in sending other condominium owners notice of a receipt of an offer to purchase, the other condominium owners may have insufficient times to accomplish these tasks.

¶ 33    Because the condominium board promptly sent notice to the other condominium owners, I need not determine the precise period in which I would consider notice sent by the board to be a violation of the bylaws and of the declaration.  Accordingly, with this understanding, I concur with the majority's opinion.